UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MS. DOE, as Next Friend of JANE DOE, an Incapacitated Person, § § § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:23-CV-1832-B |
| § | |
| DALLAS AREA RAPID TRANSIT; IRVING HOLDINGS, INC.; MV TRANSPORTATION, INC.; and MOHAMMAD IZHAR-UL-HAQ ANSARI, § § § § § § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Jane Doe's Motion for Default Judgment (Doc. 34). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Doe's Motion.

**I.**

**BACKGROUND**

This is a 42 U.S.C. § 1983 and battery case. Plaintiff Jane Doe is a mentally incapacitated female adult with the cognitive abilities of a six-year-old child. Doc. 13, Am. Compl., § VI ¶ 1.[1] One day, Doe boarded a Dallas Area Rapid Transit ("DART") paratransit cab with other mentally incapacitated adults. *Id.* at § VI ¶ 2. DART contracts with private companies to perform paratransit services for disabled persons. *Id.* at § VI ¶ 9. The cab was supposed to bring Doe and the other riders to their homes after they spent the day at an adult rehabilitation center. *Id.* at § VI ¶ 2.

---

[1] Doe repeats paragraph numbers in her Amended Complaint. To avoid confusion, the Court cites the section and paragraph number when citing Doe's Amended Complaint.

Defendant Mohammad Izhar Ul Haq Ansari drove the DART paratransit cab. *Id.* at § VI ¶ 3. After Ansari dropped off all the other passengers, he drove Doe to an unknown location. *Id.* at § VI ¶¶ 3–4. There, he lifted her shirt and "groped and fondled her breasts, legs, and vagina." *Id.* The sexual assault was captured on video. *Id.* at § VI ¶ 5. Doe filed a report with the police. *Id.* at § VI ¶ 7. Ansari pleaded guilty to aggravated sexual assault. *Id.* at § VI ¶ 8.

Doe initiated the present action in state court. Doc. 1, Notice Removal, 1. The case was subsequently removed to federal court. *Id.* at 2. The operative complaint names four defendants: (1) DART; (2) Irving Holdings, Inc. ("Irving"); (3) MV Transportation, Inc. ("MV Transportation"); and (4) Ansari. Doc. 13, Am. Compl., § I ¶¶ 2–5. Doe entered a settlement with DART, Irving, and MV Transportation, leaving Ansari as the only remaining defendant. Doc. 30, Settlement Order. Doe asserted two claims against Ansari: deprivation of constitutional rights under 42 U.S.C. § 1983 and battery. Doc. 13, Am. Compl., §§ VIII–IX.

Doe filed her Amended Complaint on January 29, 2024. Doc. 13, Am. Compl. Ansari was served the same day and failed to answer the Complaint. Doc. 34, Mot. Default J., ¶ 3. Doe requested the clerk to enter default against Ansari. Doc. 18, Req. Entry Default. The clerk entered the default. Doc. 20, Entry Default. Doe then filed her Motion for Default Judgment. Doc. 22, Mot. Default J. The Court denied Doe's Motion, finding that Doe had not sufficiently explained the substantive merits of her claim. Doc. 33, Order, 1. Doe filed an Amended Motion for Default Judgment. Doc. 34, Am. Mot. Default J. The Court considers the Motion below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides for the entry of default judgments in federal court. According to Rule 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." FED. R. CIV. P. 55(a). Once default has been entered, the Court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. *Id.* 55(b)(2).

However, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnote omitted). A party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather, "the entry of default judgment is committed to the discretion of the district judge." *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

Courts have developed a three-part analysis to guide this discretion. First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ( "[D]efault is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."). In doing so, the Court assumes that due to his default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.*

However, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *Ins. Co. of the W. v. H&G Contractors, Inc.*, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011) ("A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages."). Normally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents alone, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.

## ANALYSIS

*A.   Default Judgment is Procedurally Warranted.*

To determine whether default judgment is procedurally warranted, courts consider:

[1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893.

In light of the *Lindsey* factors, the Court finds that default judgment is procedurally warranted. First, Ansari has not filed any responsive pleadings since Doe filed her Amended Complaint. Consequently, there are no material facts in dispute. *See Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well-

pleaded allegations of fact . . . ."). Second, Ansari's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [Doe's] interests." *See Ins. Co. of the W.*, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). Third, the grounds for default judgment are clearly established because Defendants have not filed any responsive pleadings or otherwise participated in this case. *See Lindsey*, 161 F.3d at 893. Fourth, there is no evidence before the Court to indicate that Ansari's silence is the result of a "good faith mistake or excusable neglect." *See id.* Fifth, the Court is not aware of any facts that would give rise to good cause to set aside the default if challenged by Ansari. *See id.* The only factor weighing against granting default is the potential harshness of a default judgment, because Doe seeks $1,000,000 in monetary damages. Doc. 34, Mot. Default J., ¶ 17. However, the Court will determine the exact amount of damages at an evidentiary hearing. Weighing the factors, Doe has met the procedural requirements for default judgment.

B.  *There Is an Insufficient Basis for Judgment on Doe's § 1983 Claim But a Sufficient Basis for her Battery Claim.*

In light of the entry of default, Ansari is deemed to have admitted the well-pleaded allegations in Doe's Amended Complaint. *See Nishimatsu*, 515 F.2d at 1206. However, Ansari "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *See id.* Thus, the Court must review the pleadings to determine whether they provide a sufficient basis for Doe's claim for relief. *Id.* In conducting this analysis, the Court "draw[s] meaning from the case law on Rule 8," requiring "a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting FED. R. CIV. P. 8(a)(2)). "The purpose of this requirement is to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Here, Doe seeks a default judgment on two claims against Ansari: a § 1983 claim and a battery claim. Doc. 13, Am. Compl., VIII–IX. The Court finds Doe has not sufficiently pleaded her § 1983 claim but has sufficiently pleaded her battery claim.

1. Doe's Section 1983 Claim Fails.

Doe has not sufficiently pleaded a § 1983 claim against Ansari. To plead a § 1983 claim, a Plaintiff must allege (1) a violation of rights secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978). Doe alleges Ansari, "while acting under his authority and position as a public transit driver, deprived Doe of her constitutional rights by unlawfully detaining her in his vehicle and sexually assaulting her." Doc. 13, Am. Compl. § VIII ¶ 3. However, Doe also alleges that DART contracts out its paratransit services to private companies. *Id.* at § VI ¶ 9.

The Court must first determine whether Ansari acted under the color of state law because he was not directly employed by DART. To constitute a colorable § 1983 claim, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). This element excludes private conduct, even if it is discriminatory or harmful. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). There are three tests used to determine whether a private party acted under the color of state law: (1) the public function test, (2) the state compulsion test, and (3) the nexus or state action test. *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 352 (5th Cir. 2003).

Doe has not pleaded sufficient facts to allege that Ansari acted under the color of state law under any of the three tests. First, a private actor can become a state actor if the party performs a

function exclusively reserved for the state. *Id.* However, "[w]hile many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." *Flagg Bros.*, 436 U.S. at 158 (quotations omitted). Doe alleged that Ansari worked as a public transit driver for mentally incapacitated adults. Doc. 13, Am. Compl., § VI ¶ 3. But she also alleges that DART contracts with private companies to perform these paratransit services. *Id.* at § VI ¶ 9. "[T]he transportation of disabled individuals is not an exclusive state function." *Doe I v. Dall. Area Rapid Trans.*, 2013 WL 12362889, at *4 (N.D. Tex. Mar. 19, 2013) (Godbey, J.). In *Doe I*, a plaintiff with a disability sued DART and the company it contracted with to provide paratransit services after she was sexually assaulted. *Id.* at *1. The court found that the company did not act under the color of state law, because the transportation of disabled individuals is not an exclusive state function. Thus, here, the Court finds Ansari did not perform a public function by driving the paratransit service.

Second, a private actor is considered to operate under the color of state law if the state exercises coercive power or has provided significant encouragement so that the choice is deemed that of the State. *Richard*, 355 F.3d at 352. For example, the Fifth Circuit found that the state exercised coercive power when a public school football coach—a state-actor—ordered his players to assault a referee. *Watts v. Northside Indep. Sch. District*, 37 F.4th 1094, 1095, 1097 (5th Cir. 2022). Here, Doe has failed to allege any facts to show that any state actor coerced or encouraged Ansari to assault Doe.

Third, a private party is a state actor under the nexus or state action test when the state has "so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise." *Id.* (alterations in original). For example, the Supreme Court found state action when a private company obtained a prejudgment attachment to a debtor's property and

a state statute authorized a sheriff to attach the property. *Lugar*, 457 U.S. at 925, 940–41. Because the state's statute created a procedural scheme, which the company used—with the aid of a state official—to execute an unconstitutional attachment, the Court found that the company acted under the color of law. *Id.* at 940–41. Doe does not allege any interdependence between the state and Ansari to satisfy this test.

Because the facts do not establish that Ansari acted "under the color of state law," the Court will not address whether Doe's constitutional rights were violated. Thus, the Court finds there is an insufficient basis for judgment on Doe's 1983 claim.

2. <u>Doe's Battery Claim Warrants a Default Judgment.</u>

Doe pleaded facts sufficient for the Court to grant default judgment on her battery claim. Under Texas common law, the elements of battery are (1) a harmful or offensive contact (2) with a plaintiff's person. *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014). Doe alleged that Ansari made harmful contact with her person by fondling and groping her. Doc. 13, Am. Compl., § VI ¶ 4. He also pleaded guilty to aggravated sexual assault. *Id.* at § VI ¶ 8. The Courts find there is a sufficient basis for judgment on Doe's battery claim. *See Gordon*, 434 S.W. at 589.

C. *A Hearing is Required to Determine Damages.*

Doe seeks $1,000,000 in unliquidated damages. Doc. 34, Am. Mot. Default J., ¶ 17. A hearing is typically required to determine damages unless they can be "computed with certainty by reference to the pleadings and supporting documents alone." *James*, 6 F.3d at 311. Here, Doe acknowledges that her damages cannot be calculated with mathematical precision. *See* Doc. 34, Am. Mot. Default J., ¶ 17. Her motion requests $1,000,000 in damages, but it does not explain why she is entitled to these damages. Therefore, a hearing is required to determine damages.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **DENIES IN PART** and **GRANTS IN PART** Doe's Amended Motion for Default Judgment (Doc. 34). Doe's Motion is **GRANTED** as to her battery claim and **DENIED** as to her § 1983 claim. The Court will set an evidentiary hearing on damages at a later date.

A district court may dismiss an action for failure to state a claim *sua sponte* after the party is given "both notice of the court's intention and an opportunity to respond." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). Based on the insufficient factual allegations, and the fact that Doe has already amended her Motion for Default Judgment once, the Court plans to dismiss her § 1983 claim with prejudice *sua sponte* for failure to state a claim. If Doe opposes this dismissal, she must file a response within **14 days** of this Order, showing cause as to why her § 1983 claim should not be dismissed with prejudice.

**SO ORDERED.**

**SIGNED: March 20, 2025.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE